**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                        :

In re                          :

                        :    Chapter 11

556 Holding LLC, *et al.*,[1]    :

                        :    Case No. 10-_____ (___)

        Debtors.         :

                        :    (Joint Administration Pending)

------------------------------------------------------------ x

## DECLARATION OF DOROTHEA KEESER
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

Pursuant to 28 U.S.C. § 1746, I, Dorothea Keeser ("Ms. Keeser," "I" or "me"),
declare:

1.      I am the President and Director of KDMJ Realty, Inc. ("KDMJ").  KDMJ is the

managing member of 556 Holding LLC ("556 Holding," and, together with KDMJ,

the "Debtors").  In this capacity, I am familiar with the business and financial affairs of the

Debtors.

2.      I submit this Declaration, pursuant to Rule 1007-2 of the Local Rules for the

United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

Except as otherwise indicated, all facts set forth in this Declaration are based upon personal

knowledge, my review of relevant documents, information supplied to me, or my opinion, based

upon experience, knowledge, and information concerning the Debtors.  If called upon to testify, I

would be able to do so competently with respect to the facts set forth in this Declaration.  I am

authorized to submit this Declaration on behalf of the Debtors.

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): 556 Holding LLC (3732) and KDMJ Realty, Inc. (4578).  The address of the Debtors is 556 West 22nd Street, New York, NY 10011.

NYI-4299843v1

## The Debtors' Business and Their History

3.      556 Holding owns a historic 30,000 square foot building located at 556 West 22nd Street, New York, New York (the "Building").  The Building, which was built in 1850, stands on land once owned by Clement Clarke Moore, renowned author of *T'was the Night Before Christmas*.

4.      Today, the Building has two tenants, the primary tenant being the Chelsea Art Museum (the "Museum"), a non-profit organization.  The Museum pays nominal rent.  In addition to being a direct and indirect equity holder of the Debtors, I am also the president and co-founder of the Museum.

5.      KDMJ acquired the Building in 1999 with the intention of transforming the space into an art museum.  However, because of unforeseen zoning-related delays, the renovation of the Building did not commence until December 2001.  The Museum opened in 2002.

6.      The Museum, located in Chelsea, favors exhibitions that reflect the contemporary human experience across a broad spectrum of contexts.  Ms. Keeser describes the Museum's curatorial vision as "a commitment to art as a living entity which reacts and interacts with us and changes the way one continues to live one's daily life."  The Museum is also the home of the Miotte Foundation, dedicated to archiving and preserving the works of Jean Miotte.

7.      The Museum operated at a loss during its initial years of operations which I funded personally.  The Museum currently operates at relatively break-even, but this is due primarily to the fact that it is charged nominal rent by 556 Holding.

8.      In 2005, in an effort to reduce its debts, 556 Holding sought to monetize the air rights associated with the Building, and entered into a contract with respect thereto.  The prospective purchaser, however, did not close the transaction and, thereafter, it commenced legal action against 556 Holding, which continued for over four years.  At that time, the prospective

purchaser of the air rights also filed a Notice of Pendency against the property, which was ultimately dissolved in December 2009. The Debtors believe that the Notice of Pendency impaired 556 Holding's ability to refinance the outstanding mortgage and to monetize the air rights in a more favorable market than has existed since 2008. In part due to the Notice of Pendency and related litigation, 556 Holding entered into the Loan Agreement that is described below.

### Organizational and Capital Structure

9. Ms. Keeser owns 100% of the equity interests of KDMJ. KDMJ owns 99.5% of the membership interests in Debtor 556 Holding, the remaining 0.5% being owned by Ms. Keeser.

10. 556 Holding, as borrower, and HRC Fund IV REIT LLC, as lender, entered into that certain Loan Agreement, dated as of February 4, 2008 (the "Loan Agreement"). The obligations issued under the Loan Agreement (the "Loan") were in the original principal amount of $11,067,809.94. The Loan Agreement provided for interest payments and for a default interest rate of the lesser of 20% or the maximum amount permitted by law.[2] The Loan had a scheduled maturity date of January 1, 2009, with an extension option for twelve months at an increased interest rate, and subject to payment of a fee. The Loan is secured by a mortgage on the Building and related property and an Assignment of Leases. Ms. Keeser is also a guarantor (the "Guarantor"). HRC Fund IV REIT LLC assigned the Loan to West 22nd Street Properties as lender (the "Lender"). The Lender has asserted that, as of July 30, 2010, the outstanding balance under the Loan was $13,007,926.10.

---

[2] The Debtors reserve their right to challenge the enforceability of such default interest rate.

11.     Other than debts to insiders, the remaining (potential) debts of the Debtors consist of real estate taxes and other claims that are expected to be less than $600,000.[3]

## Events Leading to the Commencement of the Chapter 11 Cases

**The Forbearance Agreement**

12.     556 Holding did not refinance the Loan when it matured on January 1, 2009. Thereafter, the parties entered into discussions with respect to a forbearance agreement. The discussions culminated with the Lender, 556 Holding, as Borrower, KDMJ, as managing member of Borrower, and Dorothea Keeser, member of Borrower and Guarantor, entering into that certain Forbearance Agreement, dated as of April 21, 2009 (the "Forbearance Agreement").

13.     Under the Forbearance Agreement, the Lender agreed to forbear from exercising remedies under certain conditions until July 1, 2010 or until an Event of Default (as defined in the Forbearance Agreement) occurred thereunder. During the forbearance period, the non-default rate was 9.5%. However, in certain circumstances, the Forbearance Agreement purports to increase, retroactively, the interest rate to the default rate (i.e., up to 20%).[4]

14.     The Forbearance Agreement also purports to provide a mechanism for a more expeditious collateral enforcement process pursuant to which certain documents were to be placed into escrow, including (a) a deed in lieu of foreclosure (to be executed by 556 Holding), (b) a stipulation of judgment of foreclosure (to be executed by 556 Holding), and (c) a bill of sale of equity interests (to be executed by KDMJ and Ms. Keeser). Under the Forbearance Agreement and upon 10 days' notice to 556 Holding, the Lender may have the right to require

---

[3]     Nothing contained herein shall be construed as an admission as to the Debtors' liability with respect to such potential claims.

[4]     The Debtors reserve their right to challenge the enforceability of such retroactive increase in addition to the default rate itself.

the release of such documents from escrow, which could result in the extinguishment of the Borrower's interest in the Building and KDMJ's interest in 556 Holding.

**The Decision to Commence These Cases**

15.     The precipitating cause of these chapter 11 cases is the expiration of the forbearance period with the Lender.  Following the expiration of the forbearance period, the Debtors believe that the Lender may attempt to obtain the Building's substantial equity value at the expense of the Debtors' other stakeholders.

16.     Prior to the commencement of these chapter 11 cases, the Debtors have received two informal offers, and are in discussions with two other parties, to refinance the Loan and/or sell the Building in a transaction that would permit the Museum to continue to rent the space for nominal rent for a period of time.  The Debtors believe each of these parties to be credible and to have the cash resources to close a transaction within a short period of time.  Each of the proposals would result in the payment of the Lender and other creditors in full.  The Debtors anticipate filing a motion to approve bidding procedures with respect to the Building shortly.

17.     The Lender, however, has indicated to the Debtors its unwillingness to extend the forbearance period, which would not permit the Debtor's refinancing discussions to continue. The Lender has requested that the Debtors sign title to the Building immediately and that the Museum vacate the premises or occupy the premises for a short period of time at a rent that is not nominal.  The Debtors do not believe that the Museum's financial condition would permit it to continue operations under such circumstances.

18.     To avoid this inequitable result and to enable the Debtors to continue to explore strategic alternatives that would result in the Lender being paid in full and the Building's residual value being preserved for the benefit of those other stakeholders, the Debtors commenced these chapter 11 cases.

NYI-4299843v1

## Information Required by Local Rule 1007-2

19.     Local Rule 1007-2 requires certain information related to the Debtors, which is set forth below.  Unless otherwise indicated, the financial information contained herein is unaudited.

20.     Pursuant to Local Rule 1007-2(a)(4), Schedule 1 hereto lists the following information — to the extent available — with respect to each of the holders of the Debtors' largest unsecured claims on a consolidated basis, excluding claims of insiders:  the creditor's name, address (including the number, street, apartment or suite number and zip code, if not included in the post office address); telephone number; the name(s) of persons(s) familiar with the Debtors' accounts; the amount of the claim; and an indication of whether the claim is contingent, unliquidated, disputed or partially secured.

21.     Pursuant to Local Rule 1007-2(a)(5), Schedule 2 hereto provides the following information — to the extent available and applicable — with respect to each of the holders of the five largest secured claims against the Debtor:  the creditor's name and address (including the number, street, apartment or suite number and zip code, if not included in the post office address); the amount of the claim; a brief description of the claim; an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

22.     Pursuant to Local Rule 1007-2(a)(6), Schedule 3 hereto provides a summary of the Debtors' assets and liabilities.

23.     Pursuant to Local Rule 1007-2(a)(7), Schedule 4 hereto provides the following information:  the number and classes of shares of stock, debentures and other securities of the Debtor that are publicly held and the number of holders thereof; and the number and classes of shares of stock, debentures and other securities of the Debtor that are held by the Debtors' officers and directors and the amounts so held.

NYI-4299843v1

24.     Pursuant to Local Rule 1007-2(a)(8), Schedule 5 hereto provides a list of all of the Debtors' property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address and telephone number of such entity and the court in which any proceeding relating thereto is pending.

25.     Pursuant to Local Rule 1007-2(a)(9), Schedule 6 hereto provides a list of the premises owned, leased or held under other arrangement from which the Debtor operates its businesses.

26.     Pursuant to Local Rule 1007-2(a)(10), Schedule 7 hereto provides the location of the Debtors' substantial assets, the location of its books and records, and the nature, location and value of any assets held by the Debtor outside the territorial limits of the United States.

27.     Pursuant to Local Rule 1007-2(a)(11), Schedule 8 provides a list of the nature of present actions or proceedings, pending or threatened, against the Debtor or its property where a judgment against the Debtor or a seizure of its property is imminent.

28.     Pursuant to Local Rule 1007-2(a)(12), Schedule 9 hereto provides a list of the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtor and a brief summary of their relevant responsibilities and experience.

29.     Pursuant to Local Rule 1007-2(b)(1)-(2)(A), Schedule 10 hereto provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, stockholders, directors and financial and business consultants retained by the Debtor, for the thirty (30) day period following the filing of the Debtors' chapter 11 petition.

NYI-4299843v1

30.     Pursuant to Local Rule 1007-2(b)(3), Schedule 11 hereto provides, for the thirty (30) day period following the filing of the chapter 11 petition, a list of estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  August 6, 2010

 /s/ Dorothea Keeser
Dorothea Keeser

NYI-4299843v1

## Schedule 1

### Largest Unsecured Claims, on a Consolidated Basis (Excluding Insiders)

Pursuant to Local Rule 1007-2(a)(4), the following lists the Debtors' largest unsecured claims, on a consolidated basis, excluding claims of insiders as defined in 11 U.S.C. § 101.[1]

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Amount of claim |
|---|---|---|
| 1. NYC Department of Finance<br>1 Centre Street<br>New York, NY 10007 | NYC Department of Finance<br>1 Centre Street<br>New York, NY 10007<br>(212) 669-4855 | $172,962.42 |
| 2. Carter Ledyard & Milburn, LLP<br>2 Wall Street<br>New York, NY 10005 | Carter Ledyard & Milburn, LLP<br>2 Wall Street<br>New York, NY 10005<br>(212) 732-3200 | $81,690.89 |
| 3. Blank Rome LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, NY 10174-0208 | Blank Rome LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, NY 10174-0208<br>(212) 885-5000 | $47,340.01 |
| 4. NY Contracting & Construction Management Co.<br>147 E. 2nd St., Suite 201<br>Mineola, NY 11501 | John Moore<br>NY Contracting & Construction Management Co.<br>147 E. 2nd St., Suite 201<br>Mineola, NY 11501<br>(516) 746-6300 | $35,000.00 |

---

[1] The claims listed on this List of Creditors Holding Largest Unsecured Claims (the "Top Creditor List") exclude claims of "insiders," as defined in section 101(31) of title 11 of the United State Code (the "Bankruptcy Code"). Although Rule 1007(d) of the Federal Rules of Bankruptcy Procedure and Local Rule 1007-2(a)(4) require all debtors in a case under chapter 11 of the Bankruptcy Code to file with their petitions a list of their 20 largest unsecured creditors, the Debtors have included on the Top Creditor List less than 20 unsecured creditors because they have less than 20 unsecured creditors.

The information on this Top Creditor List shall not constitute an admission of liability by, nor is it binding on, the Debtor. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits and adjustments, which are not reflected herein.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Amount of claim |
|---|---|---|
| 5. Stern & Zingman LLP<br>110 E. 59th St., 29th Floor<br>New York, NY 10022 | Mitchell Zingman<br>Stern & Zingman LLP<br>110 E. 59th St., 29th Floor<br>New York, NY 10022<br>(212) 207-3825 | $6,049.85 |
| 6. At Architects<br>50 W. 29th St., Unit 10W<br>New York, NY 10001 | At Architects<br>50 W. 29th St., Unit 10W<br>New York, NY 10001 | $5,361.36 |
| 7. Lutz and Carr CPAs<br>300 East 42nd Street, 8th floor<br>New York, NY 10017 | Martin Berkowitz, CPA<br>Lutz and Carr CPAs<br>300 East 42nd Street, 8th floor<br>New York, New York 10017<br>(212) 697-2299, ext. 605 | $1,495.00[2] |
| 8. Cozen O'Connor<br>45 Broadway, 16th Floor<br>New York, NY 10006 | Gerald N. Schrager<br>Cozen O'Connor<br>45 Broadway, 16th Floor<br>New York, NY 10006<br>(212) 509-9400 | Unliquidated |
| 9. The Law Office of Robert L. Greener<br>The Empire State Building<br>350 Fifth Avenue, Suite 7720<br>New York, NY 10118 | Robert Greener<br>The Law Office of Robert L. Greener<br>The Empire State Building<br>350 Fifth Avenue, Suite 7720<br>New York, NY 10118<br>(646) 415-8920 | Unliquidated |

---

[2]      Debtor 556 Holding LLC owes Lutz and Carr CPAs $500.00 and Debtor KDMJ Realty, Inc. owes Lutz and Carr CPAs $995.00.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Amount of claim |
|---|---|---|
| 10. New Gallery On Old Bailey, Ltd<br>G/F & Basement<br>17 Old Bailey Street<br>Soho, Central, Hong Kong | James Wang<br>c/o Steven Soulios, Esq.<br>Ruta & Soulios LLP<br>1500 Broadway, 21st Fl.<br>New York, NY 10036<br><br>James Wang<br>New Gallery On Old Bailey, Ltd<br>G/F & Basement<br>17 Old Bailey Street<br>Soho, Central, Hong Kong<br>852-2234-9889 | Unliquidated |

## Schedule 2

### 5 Largest Secured Claims

Pursuant to Local Rule 1007-2(a)(5), the following lists the Debtors' largest secured claims.[3]

| Creditor | Contact | Mailing Address & Phone Number | Amount of Claim | Type of Collateral |
|---|---|---|---|---|
| West 22nd Street Properties LLC | David Loo | c/o Hudson Realty Capital LLC<br>250 Park Avenue South, Third Floor<br>New York, NY 10003<br>(212) 532-3553 | $13,007,926.10 | Real property |
| Cozen O'Connor | Gerald N. Schrager | 45 Broadway, 16th Floor<br>New York, NY 10006<br>(212) 509-9400 | Unliquidated | Retainer |
| The Law Office of Robert L. Greener | Robert Greener | The Empire State Building 350 Fifth Avenue, Suite 7720<br>New York, NY 10118<br>(646) 415-8920 | Unliquidated | Retainer |

---

[3] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors.

## Schedule 3

### Summary of Assets and Liabilities

Pursuant to Local Rule 1007-2(a)(6), the following is a summary of the Debtors' assets and liabilities:

The Debtors' primary asset is certain real property, consisting primarily of land and a building, located at 556 West 22nd Street, New York, NY 10011.  The Debtors also own certain cash held in escrow by the Lender and certain other obligations that are owed to the Debtors.

The Debtors' primary liabilities include, among other things, (a) the obligations due to the Lender under the Loan Agreement as set forth in Schedule 2 above and (b) the unsecured claims described in Schedule 1 above.

## Schedule 4

### Publicly Held Securities

Local Rule 1007-2(a)(7) requires the Debtors to identify the number and classes of shares of stock, debentures and other securities of the Debtor that are publicly held and the number of holders thereof.

As of the Petition Date, the Debtors had no publicly held securities.

**Schedule 5**

**Debtors' Property Not in the Debtors' Possession**

Pursuant to Local Rule 1007-2(a)(8), the Debtor are required to list property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, secured creditor or agent for any such entity.

The Lender holds approximately $80,000 of the Debtors' cash in reserve for interest, insurance and servicing fees.

## Schedule 6

### Debtors' Property

   Pursuant to Local Rule 1007-2(a)(9), the following lists the property or premises owned, leased or held under other arrangement from which the Debtors operate their businesses.

### Owned Property

The Debtors own certain real property located at 556 West 22nd Street, New York, NY 10011.

### Leased Property

None.

## Schedule 7

### Location of Debtors' Substantial Assets

The Debtors' assets are located primarily at their offices located at 556 West 22nd Street, New York, NY 10011.

### Location of Debtors' Assets, Books and Records

The Debtors' books and records are located at 556 West 22nd Street, New York, NY 10011.

### Debtors' Assets Outside the United States

The Debtors do not have assets outside the territorial United States.

**<u>Schedule 8</u>**

**Litigation**

      Pursuant to Local Rule 1007-2(a)(11), the Debtors must list the nature and present status of each action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against the Debtors or a seizure of their property may be imminent.

      The Debtors believe that they have no action or proceeding, pending or threatened, against the Debtors or their properties where a judgment against the Debtors or a seizure of their property may be imminent.

**<u>Schedule 9</u>**

**Senior Management**

       Pursuant to Local Rule 1007-2(a)(12), the following provides the names of the individuals who comprise the Debtors' existing senior management, a description of their tenure with the Debtors and a brief summary of their relevant responsibilities and experience.

| Name / Position | Experience / Responsibilities |
|---|---|
| Dorothea Keeser<br><br>*President and Director* | Dorothea Keeser, President and Director of Debtor KDMJ Realty, Inc. is also co-founder and President of the Museum, which opened to the public in 2002 due in large part to her efforts and donations.  Ms. Keeser has been President and Director of KDMJ since its founding. |

**Schedule 10**

**Payroll**

Pursuant to Local Rule 1007-2(b)(1)-(2)(A) and (C), the following provides the estimated amount of weekly payroll to the Debtors' employees (not including officers, directors and stockholders) and the estimated amount to be paid to officers, stockholders, directors and financial and business consultants retained by the Debtors, for the thirty (30) day period following the filing of the chapter 11 petitions.

| | |
|---|---|
| **Payments to Employees (Not Including Officers, Directors and Stockholders)** | **$0** / 30 days[4] |
| **Payments to Officers, Directors and Stockholders** | **$0** / 30 days |
| **Payments to Financial and Business Consultants** | **$0** / 30 days |

---

[4] The Debtors do not have any employees.

**Schedule 11**

**Cash Receipts and Disbursements,**
**Net Cash Gain or Loss, Unpaid Obligations and Receivables**

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the thirty (30) day period following the filing of the chapter 11 petition, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $8,350.00 |
| **Cash Disbursements** | $0.00 |
| **Net Cash Gain** | $8,350.00 |
| **Unpaid Obligations** | $0.00[5] |
| **Unpaid Receivables** | $0.00 |

---

[5] This amount excludes any interest or other charges that may accrue under the Loan Agreement.