KRAMER LEVIN NAFTALIS & FRANKEL LLP
P. Bradley O'Neill
Jay A. Neveloff
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Fax: (212) 715-8000

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| 556 Holding LLC, et al.,[1] | Case No. 10-14267 (ALG) |
|  | (Jointly Administered) |
| Debtors. |  |

**STATEMENT AND RESERVATION OF RIGHTS BY ALBANESE DEVELOPMENT CORPORATION REGARDING THE MOTION OF DEBTORS TO SELL THE BUILDING, LAND AND OTHER PROPERTY LOCATED AT 556 WEST 22ND STREET FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO ALBANESE DEVELOPMENT CORPORATION**

TO: THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Albanese Development Corporation ("Albanese"), by and through its undersigned counsel, submits this statement (the "Statement") with respect to the motion (the "Motion") of the above-captioned debtors-in-possession (collectively, the "Debtors") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order authorizing and approving (a) the sale of any and all of Debtor 556 Holding LLC's right, title and

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): 556 Holding LLC (3732) and KDMJ Realty, Inc. (4578). The address of the Debtors is 556 West 22nd Street, New York, NY 10011.

interest in and to the real property, building and certain personal property and other interests located at 556 West 22nd Street, New York, New York (collectively, the "Property") to Albanese free and clear of liens, claims, interests and encumbrances thereon, and (b) granting other relief related thereto. In support of this Statement, Albanese respectfully represents as follows:

## Statement

1. Court approval of the Purchase Agreement with Albanese will provide a fantastic result for all of the estates' constituents. As noted in the Motion, the consideration provided to the Debtors under the Purchase Agreement exceeds $20,500,000.00 – an amount more than sufficient to satisfy all claims against the Debtors in full and in cash, and provide a meaningful distribution to the Debtors' sole equity holder. In addition, Albanese has the wherewithal to close on the transaction on an expedited basis. The contract between the Debtors and Albanese that is the subject of this motion provides for a closing one week from today. Albanese has the necessary funds in hand to close on that schedule and, subject to final resolution of the title issues before the Court, is ready, willing and able to do so. In light of the benefits of the Albanese transaction, the Debtors determined the marketing and bidding process on the Property had run its course and filed the Motion seeking approval of the Purchase Agreement with Albanese in a private sale.

2. Nevertheless, not content with a transaction that will assure these substantial benefits to the estates' constituents, *a mere day ago*, on Saturday, November 6, 2010, the Debtors informed Albanese that they had received another bid that, if it were to close – which is far from clear – would (after payment of contractual fees) net slightly more than $300,000 in

additional consideration for the Debtors' sole equity holder. On this basis, the Debtors have asserted that they may withdraw the Motion and instead seek an auction of the Property.

3. Albanese has filed this Statement to urge the Court not to endorse this "bait and switch." First, given the uncertainty of this new offer, the sale transaction with Albanese is clearly the highest and best offer for the Property and is truly a "bird in the hand." Albanese is a well-respected and substantial actor in the New York real estate market that has completed new construction of over 2 million square feet over the last ten years. Albanese has already provided the Debtors with a $2 million deposit, completed all due diligence on the Property, and most importantly, assuming final resolution of the title issue, is ready, willing and able to close within the week on a transaction that will pay all the Debtors' creditors in full and provide a substantial distribution to the Debtors' sole equity holder. Albanese's firm agreement and ability to close promptly make its contract the best available to the Debtors, even in the face of a last minute bid that is marginally higher in amount. It is well established, that the Court has the discretion to consider the totality of the terms and circumstances of the transaction and not just the purchase price in determining the best offer. Thus, in *G-K Dev. Co. v. Broadmoor Place Investments (In re Broadmoor Place Investments)*, 994 F.2d 974 (10th Cir. 1993), the court rejected the debtor's contention that a nominally higher bid was "highest and best," where a comparable bid existed that was subject to fewer contingencies. *Id*. at 746 ("a Bankruptcy Court in a case such as this does have the power to disapprove a proposed sale recommended by a trustee . . . if it has an awareness there is another proposal in hand which, from the estate's point of view is better or more acceptable").

4. Second, this is not the first time the Debtors changed course in these proceedings and not the first time that their doing so threatened estate interests. The Property

- 3 -

has been marketed for over eight months. During that time, the Debtors' principal has repeatedly agreed to and then missed deadlines, pursuing transactions whose initial promise ultimately did not pan out and, by doing so, created potential clouds on title and placed the estates at risk. Now, having finally reached agreement with Albanese on a private sale, the Debtors again risk upsetting the applecart to pursue a last minute bid by a party whose bona fides are unclear. Against this background, there is simply no valid reason to authorize the Debtors to chase, one week (or less) from an all cash closing, a new offer from a party who may or may not be able to close simply because it has submitted a paper proposal that promises 1-2% more consideration to equity.

5. Third, as the Debtors acknowledge in the Motion, Albanese entered into the Purchase Agreement with the Debtors in good faith based on the Debtors' representations that they had completed the marketing process on the Property. By its terms, the Purchase Agreement is not subject to other bids or an auction procedure and *obligates the Debtors to obtain approval of the transaction*. Albanese is mystified how the Debtors can possibly satisfy this obligation while simultaneously entertaining a competing bid. To the extent the Debtors elect not to close with Albanese and, instead, pursue options not contemplated by the Purchase Agreement, Albanese reserves all of its rights and remedies and will take such actions as are appropriate to protect its interests.

6. For each of these reasons, it is in the best interests of the Debtors' estates to approve the Albanese transaction at the November 8, 2010 hearing. Given the certainty of the Albanese transaction and the uncertain ability of the purported new bidder to close, it is simply inappropriate to authorize the Debtors' sole equity holder to roll the dice, risking a full recovery for the creditors, on the chance of gaining a marginally enhanced return for itself. If the Court

does not approve the Purchase Agreement with Albanese by November 13, 2010, Albanese has the right to terminate the contract. The risk to the estates and the Debtors' creditors (other than Hudson) is clear – if Albanese does not bid in an auction and the new bidder fails to close, creditors, other than Hudson, may wind up with nothing. For this reason, Albanese urges the Court to take the "bird in the hand" and allow the estates and the Debtors' creditors to enjoy the benefit of an all cash closing, pursuant to the Purchase Agreement, seven days from today (or sooner).

WHEREFORE, Albanese requests the Court approve the Motion as filed.

Dated: November 7, 2010
New York, New York

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: /s/ P. Bradley O'Neill
P. Bradley O'Neill
Jay A. Neveloff
Stephen D. Zide
1177 Avenue of the Americas
New York, New York 10036
Phone: (212) 715-9100
Fax: (212) 715-8000